MYERS, P.J.,
for the court.
¶ 1. Kendall Wayne Pilgrim was convicted in the Circuit Court of Neshoba County of possession of methamphetamine in an amount of at least 0.10 gram but less than 2.0 grams, in violation of Mississippi Code Annotated section 41-29-139(c)(l)(B) (Rev. 2005). The trial court sentenced Pilgrim as a second offender to sixteen years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, Pilgrim appeals, arguing that the trial court erred in denying his motion for a continuance, in refusing one of his jury instructions, and in the admission of hearsay testimony. Finding no reversible error, we affirm.
FACTS
¶ 2. Mississippi Highway Patrolman Harbert Johnson testified that he and two other patrolmen were conducting a roadblock at an intersection in Neshoba County, Mississippi, when Pilgrim approached in a white van. Pilgrim was the only occupant of the van. Trooper Johnson observed Pilgrim throw a black object out of the driver’s side window as the van approached the checkpoint.
¶ 3. While Pilgrim, who did not have his driver’s license with him at the time, was held at the checkpoint, Trooper Johnson retrieved the black object, which had been thrown approximately 35 to 40 yards away from his position. Trooper Johnson testified that the object had landed in the middle of the road and that he had been able to keep an eye on it after it was thrown. When Trooper Johnson approached the object, he observed that it was a small, black zipper bag, which was unzipped. He also observed two small, clear plastic bags lying beside the zipper bag, which contained a substance he believed to be methamphetamine. Inside the black zipper bag, Trooper Johnson found two additional plastic bags, which were open and appeared to have residue inside. Pilgrim was then arrested.
¶ 4. Other State witnesses testified as to chain of custody, and Jamie Johnson, a forensic scientist specializing in drug identification, testified that the plastic bags were later confirmed to have contained 0.87 gram of methamphetamine.
¶ 5. The defense put on no witnesses, and Pilgrim did not testify. He was subsequently convicted and sentenced. On appeal, Pilgrim argues three assignments of error.
DISCUSSION
I. Denial of Continuance
¶ 6. On the day of trial, Pilgrim’s attorney, Christopher Collins, moved for a continuance, arguing that he had “not conferred in a meaningful way that I normally *151 would with somebody that I thought [I] was going to trial with this morning.” Collins, an appointed public defender, stated that this was because Pilgrim was seeking other counsel. Collins stated that, until the morning of the trial, he believed Pilgrim had retained other counsel.[1] Collins admitted, however, that he had been unable to speak with the putative attorney to confirm he would represent Pilgrim, and the prosecutor stated that he had contacted the attorney in the days prior to trial and that the attorney had stated that he would not represent Pilgrim.
¶ 7. In support of his motion for a continuance, Collins also argued that the State failed to timely disclose exculpatory evidence in the result of a fingerprint analysis conducted on the plastic bags. The report found “no latent prints of value.”

A. Defense Counsel’s Preparedness for Trial

¶ 8. As to the appellate review of a denial of a motion for continuance following a violation of Rule 9.04 of the Uniform Rules of Circuit and County Court, the supreme court has stated:
The trial court has considerable discretion in matters pertaining to discovery, and its exercise of discretion will not be set aside in the absence of an abuse of that discretion. The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice. A violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.
Payton v. State, 897 So.2d 921, 942(¶ 67) (Miss.2003) (internal citations omitted).
¶ 9. Pilgrim argues that the trial court erred in denying his motion for a continuance because Collins was unprepared for the trial. Although Collins did state that he felt he had not adequately consulted with Pilgrim prior to the trial, Collins did not allege any specific resulting prejudice, either in arguing the motion or in his subsequent motion for a new trial. Likewise, on appeal, Pilgrim fails to identify any manifest injustice that resulted from Collins’s lack of preparation. Pilgrim simply asserts that Collins was unprepared for the trial; however, Collins made no such admission in the trial court, and Pilgrim has not alleged or demonstrated any specific prejudice as a result. Instead, our review of the record indicates that Collins, who represented Pilgrim for at least two weeks prior to the trial,[2] provided able representation and manifested no lack of familiarity with the facts of the case.

B. Discovery Violation

¶ 10. Pilgrim also argues that the trial court erred in refusing the continuance because of the State’s discovery violation. Collins alleged that the State had failed to timely provide the defense with the negative result of a fingerprint analysis on the plastic bags, in violation of Mississippi Uniform Rule of Circuit and County Court 9.04(A)(6), which requires that the State timely disclose exculpatory evi *152 dence to the defendant. Collins stated that he had only learned of the result of the fingerprint analysis the morning of the trial, shortly before the trial was to begin. The prosecutor admitted that he had not provided the results of the fingerprint analysis, but he stated that this was because his office had been unaware of the test until shortly before trial.[3]
¶ 11. Here, Pilgrim has alleged specific prejudice. At trial, Collins argued:
I’ve got a client that apparently has the resources to privately retain a lawyer and while, obviously, we haven’t had a chance to discuss it, it may be his desire to retain his own expert on the issue of fingerprints also. I don’t know, but, Your Honor, he would be prejudiced to not having [sic] the opportunity to pursue that.
On appeal, Pilgrim broadens that argument. In his brief, he asserts:
The comment that there were “no latent prints of value” was not a denial that there were latent prints. The words “of value” would have been omitted if there had been no latent prints. The addition of the words “of value” meant either that the prints on the bag were unclear or that they were of person or persons unknown to the fingerprint technician.
Had the Court granted the motion for a continuance, Appellant’s counsel would have had time to inquire of the technician about this, to determine which databases, if any, were consulted to try to identify any readable fingerprints, and to submit any readable fingerprints to such bases as may be available to identify the person whose fingerprints were on the bag.
¶ 12. Uniform Rule of Circuit and County Court 9.04(1) states:
If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.[4]
¶ 13. Our standard of review is clear: “The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice.” Payton, 897 So.2d at 942(¶ 67). “A violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.” Id.
¶ 14. We find that Pilgrim’s argument is without merit for several reasons. First, the State’s apparent untimely disclosure of the results of its fingerprint analysis is simply unrelated to Pilgrim’s ability to pursue his own independent analysis; he could have sought his own fingerprint tests notwithstanding the alleged discovery *153 violation. Likewise, his attorney could have discussed undertaking an independent fingerprint analysis without knowing the results of the State’s analysis.
¶ 15. Second, and more fundamentally, reversal on the grounds of a trial court’s denial of a motion for continuance requires a showing that the trial court’s decision resulted in a manifest injustice. Id. (emphasis added). Pilgrim argues that such an injustice may have resulted had he conducted his own fingerprint analysis, but Pilgrim has failed to demonstrate that an injustice did occur. Pilgrim appears to have made no effort to procure the testimony of the State’s analyst or to secure his own analysis. Furthermore, the report from the State’s fingerprint analysis does not appear in the record, and nothing in the record supports Pilgrim’s assertions on appeal regarding its specific findings. A defendant seeking review of a denial of a continuance may not rest on possibilities. The supreme court has stated that, to preserve for appellate review the denial of a motion for continuance:
If the court declines to grant the continuance [an attorney] should sue out the proper process for [the witnesses he desires to call], and when the case is called for trial should renew his application, make such changes in his affidavit as the conditions then existing require. If the continuance is still refused, he should with unremitting diligence seek to secure their attendance pending the trial by the continued use of the process of the court; if tried and convicted he should still persist in his efforts to enforce their attendance before the expiration of the term, and on his motion for a new trial present them to the court for examination; if, with all of his efforts, he is unable to have the witnesses personally present, he should, if practicable, secure their ex parte affidavits, which should be presented for the consideration of the court, which, on the motion for a new trial, will review the whole case and correct any error prejudicial to the defendant which may appear in any part of the proceeding.
King v. State, 251 Miss. 161, 171-72, 168 So.2d 637, 641 (1964) (citation and internal quotations omitted).
¶ 16. Finally, even if evidence of another’s prints had been found on the bags, it would not result in a manifest injustice. Trooper Johnson testified that he observed Pilgrim throw the bags containing the drugs from his vehicle. Pilgrim was taken into custody a short time later, having never left the officers’ presence. Pilgrim’s identity was not in question. Furthermore, if fingerprints had been found on the bags, it would not be compelling evidence that the drugs were not in Pilgrim’s possession prior to being thrown from the vehicle; that another had handled the bags previously is not inconsistent with Pilgrim’s guilt.
¶ 17. In reviewing the record, we find no merit to Pilgrim’s argument that the trial court abused its considerable discretion in denying his motion for a continuance. This issue is without merit.
II. Defense Jury Instruction D-6
¶ 18. In his second assignment of error, Pilgrim urges this Court to reverse his conviction based on the trial court’s refusal to grant proposed jury instruction D-6. This Court’s standard of review in challenges to the jury instructions is as follows:
In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. De *154 fendants do not have an absolute right to have their jury instructions granted. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.
Watts v. State, 936 So.2d 377, 386(¶30) (Miss.Ct.App.2006) (internal citations and quotations omitted).
¶ 19. Pilgrim’s proposed jury instruction states the following:
The Defendant is charged by indictment with the crime of possession of methamphetamine. To constitute a possession, there must be sufficient facts to warrant a finding beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence, that a defendant was aware of the presence and character of the methamphetamine, and was intentionally and consciously in possession of same. Where the particular chemicals are not in the actual physical possession of a defendant, there must be sufficient facts to establish beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence, that the particular substance involved was subject to the defendant’s dominion or control.
(Emphasis added).
¶ 20. The trial court refused the instruction because it would require that the jury find Pilgrim guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. The trial court found this language inappropriate because the State based its case on direct evidence, rather than circumstantial. Because Trooper Johnson witnessed Pilgrim drop the contraband from his car onto the street, the trial court reasoned, Pilgrim’s case is not a circumstantial evidence case.
¶ 21. The supreme court defines a circumstantial evidence case as one in which there is no eyewitness testimony or confession. State v. McMurry, 906 So.2d 43, 46(¶ 13) (Miss.Ct.App.2004). “It is only in cases where the evidence is entirely circumstantial that the jury is required to exclude every other reasonable hypothesis than guilt.” Id. at (¶ 15) (quoting Whitlock v. State, 419 So.2d 200, 204 (Miss.1982)) (emphasis added). Because Trooper Johnson’s eyewitness testimony constituted direct evidence, ho circumstantial evidence instruction was required in this case.
¶ 22. Furthermore, absent the circumstantial evidence language of proposed instruction D-6, the instruction is essentially the same as instruction S-3, which was given by the trial court. Instruction S-3 states:
The Court instructs the Jury that to constitute possession, there must be sufficient facts to warrant a finding that the Defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be in actual physical possession; constructive possession may be shown by establishing that the substance involved was subject to the Defendant’s dominion and control.
Both instructions define constructive possession for the jury and require Pilgrim’s awareness of the nature of the contraband. Because the trial court may refuse an instruction which “incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence,” we find no error in the trial court’s *155 refusal to give proposed instruction D-6. See Watts, 936 So.2d at 386(¶ 30).
¶23. Therefore, this issue is without merit.
III. Hearsay Testimony
¶ 24. Finally, Pilgrim argues that the trial court allowed impermissible hearsay testimony. At trial, Mississippi Bureau of Narcotics Agent Will Peterson testified for the State as to the chain of custody. On cross-examination, the following colloquy took place:
Q. Agent Peterson, the assistance you talked about giving to other agencies, is that assistance in processing what’s alleged drug evidence?
A. That’s correct.
Q. In this instant, when you took possession of the exhibit from Trooper Johnson, did you put on latex gloves before you handled it?
A. I did.
Q. And the reason you did that is because when you submitted this evidence for analysis, you requested both drug analysis and also fingerprint analysis?
A. That’s correct.
Q. And you submitted a known fingerprint card of the accused?
A. That’s correct.
[DEFENSE COUNSEL]: No further questions.
THE COURT: Redirect?
REDIRECT EXAMINATION BY [PROSECUTOR]:
Q. Agent Peterson, what was the result of that fingerprint request?
A. The Crime Lab did not find any—
[DEFENSE COUNSEL]: Your Honor, I object to hearsay testimony here.
[PROSECUTOR]: Your Honor, he opened the—
THE COURT: I’ll overrule the objection.
[DEFENSE COUNSEL]: Your Honor, may I further make my objection.
Ultimately, the trial judge overruled Pilgrim’s contemporaneous objection as well as his subsequent motion for a mistrial. Redirect examination by the State produced the following testimony:
Q. [PROSECUTOR]: Agent Peterson, before [defense counsel’s] objection, I asked you what was the result of the fingerprint examination that you submitted to the Crime Lab?
A. [AGENT PETERSON]: According to their report, there was [sic] no prints of value found on the baggies, on the submission.
The State argued that admission of testimony attesting to the fact there were no prints of value did not result in any prejudice to the defendant and was admissible because Pilgrim “opened the door.”
¶ 25. Pilgrim, citing Murphy v. State, 453 So.2d 1290 (Miss.1984), argues on appeal that the trial court abused its discretion because the defense cannot open the door to hearsay. The State replies that the testimony elicited was not hearsay, because it was not offered to prove the truth of the matter asserted — whether there were or were not fingerprints on the bag — but to rebut the defense’s insinuations of an incomplete or shoddy investigation and to tell the complete story of the investigation.
¶ 26. “Relevancy and admissibility of evidence are largely within the discretion of the trial court and [a reviewing court] will reverse only where that discretion has been abused.” Hentz v. State, 542 So.2d 914, 917 (Miss.1989). Furthermore, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right is affected *156 by the ruling. M.R.E. 103(a). “If the defendant fails to show what right, if any, was affected by such ruling, no reversible error lies.” Johnson v. State, 908 So.2d 758, 765(¶ 24) (Miss.2005) (citing Simmons v. State, 805 So.2d 452, 487-88(¶ 92) (Miss.2001)).
¶27. In his brief on appeal, Pilgrim simply asserts that the testimony was hearsay and should not have been admitted. Because Pilgrim has failed to identify what rights, if any, were affected by the trial court’s decision, this argument is without merit. Furthermore, Pilgrim has repeatedly argued that the negative result of the fingerprint analysis was exculpatory. Clearly, reversible error cannot be found in the wrongful admission of exculpatory evidence. This issue is without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF POSSESSION OF METHAMPHETAMINE AND SENTENCE AS A SECOND OFFENDER OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHO-BA COUNTY.
LEE, P.J., IRVING, BARNES AND ROBERTS, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., GRIFFIS AND ISHEE, JJ.

. Collins did not elaborate on the exact circumstances that led him to believe Pilgrim had secured other counsel.

. In arguments before the trial court, the prosecutor stated without objection that Collins had announced the case would be ready for trial approximately two weeks prior to the trial date. While it is unclear from the record exactly when Collins was appointed, what appears to be his signature appears on a waiver of arraignment form as Pilgrim’s attorney, dated January 25, 2008, approximately seven weeks before the trial.

. The fingerprint analysis report does not appear in the record, and the record is silent on exactly when the report was ordered, completed, or delivered. Collins stated that he knew a report had been ordered as "when I read the discovery this morning prior to trial, I noticed that there was some evidence submitted and some results requested from the Crime Lab ... I didn’t see any results on [sic] fingerprint analysis request."

. The dissent’s reliance on the latter part of this rule is misplaced. It applies only to objections made where, "If during the course of the trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense....’’ URCCC 9.04(1) (emphasis added). Pilgrim’s motion for a continuance was made prior to trial and not in response to a surprise attempted admission of the fingerprint analysis.