# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2012-KA-00363-COA

DEXTER JOHNSON                                                      APPELLANT

v.

STATE OF MISSISSIPPI                                                 APPELLEE

DATE OF JUDGMENT:                11/05/2007
TRIAL JUDGE:                     HON. KENNETH L. THOMAS
COURT FROM WHICH APPEALED:       BOLIVAR COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         JOHN M. COLETTE
                                 SHERWOOD ALEXANDER COLETTE
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:               BRENDA FAY MITCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
TRIAL COURT DISPOSITION:         CONVICTED OF COUNT I, KIDNAPPING,
                                 AND COUNT II, MURDER, AND
                                 SENTENCED TO THIRTY YEARS FOR
                                 COUNT I, AND LIFE WITHOUT THE
                                 POSSIBILITY OF PAROLE FOR COUNT II,
                                 WITH THE SENTENCES IN COUNTS I AND
                                 II TO RUN CONCURRENTLY TO EACH
                                 OTHER BUT CONSECUTIVELY TO ANY
                                 PREVIOUSLY IMPOSED SENTENCE, ALL
                                 IN THE CUSTODY OF THE MISSISSIPPI
                                 DEPARTMENT OF CORRECTIONS, AND
                                 TO PAY $3,944 IN RESTITUTION AND
                                 $156 TO THE CRIME VICTIMS'
                                 COMPENSATION FUND
DISPOSITION:                     AFFIRMED - 10/27/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

   **BEFORE GRIFFIS, P.J., BARNES AND JAMES, JJ.**

   **BARNES, J., FOR THE COURT:**

¶1. Dexter Johnson appeals his convictions for kidnapping and murder on the bases that he received ineffective assistance of counsel, and the trial court abused its discretion in dismissing two jurors during the trial. Finding no error, we affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

¶2. On the afternoon of August 1, 2005, Robert Hill Smith and JimBuck Frazier were riding in Frazier's car, when they passed Johnson's home. Spying Smith in the car, Johnson followed the men because Smith owed him approximately $65. Johnson stopped Frazier and Smith and approached the car with a gun in his hand. Johnson got into the back seat of Frazier's car and ordered Smith to give him the money he owed, pointing the gun at Smith's leg. Johnson then forced Smith to get into Johnson's car, and they drove away. Frazier did not see Smith and Johnson again.

¶3. The following morning, a Bolivar County road worker cutting grass on Cut-Off Road found Smith's dead body in a corn field. Smith had been shot several times: twice in the arm, three times in the back, and once in the back of the head. There were also abrasions on the left side of his face. Upon hearing of Smith's death, Frazier contacted law enforcement and gave a statement about the incident that had occurred the previous day. Johnson was arrested, and he provided a statement to police, confessing that he shot Smith. Johnson admitted that he abducted Smith at gunpoint, but claimed that he only intended to "scare" Smith into giving him the money. When the two men reached Cut-off Road, Smith started fighting with him. During the tussle, Johnson felt Smith "poke" him with an object. He responded by shooting Smith and dragging his body into the corn field. Although Johnson

2

originally said he disposed of the gun in a nearby lake, Johnson later directed law enforcement to a boarding house he occasionally frequented, where they found a loaded gun that matched the 9 millimeter shell casings found near Smith's body at the crime scene.[1]

¶4.   Johnson was charged with kidnapping and murder.  After a jury trial in Bolivar County Circuit Court on October 1-4, 2007, Johnson was convicted on both counts and sentenced to thirty years for Count One, kidnapping, and life without parole for Count Two, murder, to be served in the custody of the Mississippi Department of Corrections.

¶5.   After the trial court denied his numerous posttrial motions, Johnson appealed his convictions, asserting that he received ineffective assistance of counsel and that the trial court abused its discretion in dismissing two jurors during the trial.  We find no error and affirm the judgment.

## DISCUSSION

**I.     Whether Johnson was denied his right to effective assistance of counsel.**

¶6.   Johnson submits that he was denied effective assistance of counsel due to defense counsel's decision not to challenge the admissibility of his taped confession through a motion to suppress, and his failure to move for a mistrial after the dismissal of two jurors.

¶7.   A claim of ineffective assistance of counsel on direct appeal "should be addressed only when '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Collins v. State*, 70

---

[1] No bullets were recovered from Smith's body.

So. 3d 1144, 1147-48 (¶17) (Miss. Ct. App. 2011) (quoting *Colenburg v. State,* 735 So. 2d 1099, 1101 (¶5) (Miss. Ct. App. 1999)). Therefore, "ineffective assistance claims are more appropriately brought during post-conviction proceedings . . . because[,] during direct appeals[,] the Court is limited to the trial court record in its review of the claim, and there may be instances in which insufficient evidence exists within the record to address the claim adequately." *Cage v. State*, 149 So. 3d 1038, 1046 (¶22) (Miss. 2014). However, a claim may be brought on direct appeal "if such issues are based on facts fully apparent from the record." *Id*. (quoting M.R.A.P. 22(b)).

¶8.    As the parties have made no stipulation as to the adequacy of the record, we must inquire whether the record affirmatively shows that Johnson was denied effective assistance of counsel. "[W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief." *McClendon v. State*, 152 So. 3d 1189, 1192 (¶12) (Miss. Ct. App. 2014) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002)). Here we find that all of Johnson's claims are confined to the record and can be found within the trial transcript; so we will consider his ineffective-assistance-of-counsel claim.

A.    **Counsel's Failure to Contest the Admissibility of Johnson's Statement**

¶9.    Defense counsel filed a motion to suppress Johnson's statement on April 3, 2006. The motion asserted that statements made by Johnson to law enforcement "were the result of persistent and repeated interrogations by numerous law enforcement officers and in the

4

absence of counsel and without an intelligent or knowing waiver of counsel." A hearing to determine whether Johnson's statement was voluntary was requested.

¶10. However, once the trial began, defense counsel informed the circuit court that there was no objection to allowing the statement into evidence. Counsel stated: "[A]s a trial strategy, we have no objection to the statement coming in because we believe it's been tampered with." The circuit judge concluded that if the defense was "going to concede the admissibility of [the statement,] the [c]ourt [would] let it in."

¶11. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that his defense counsel's performance was deficient, and (2) that the deficient performance was prejudicial to his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "The determination of whether counsel's performance was both deficient and prejudicial must be determined from the 'totality of the circumstances.'" *Harris v. State*, 979 So. 2d 721, 730 (¶25) (Miss. Ct. App. 2008) (quoting *Wynn v. State*, 964 So. 2d 1196, 1200 (¶11) (Miss. Ct. App. 2007)). "When reviewing a claim of ineffective assistance of counsel, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Herrington v. State*, 102 So. 3d 1241, 1244-45 (¶11) (Miss. Ct. App. 2012) (quoting *Strickland,* 466 U.S. at 689). Trial counsel's decisions on "whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim."

5

*Id*. at 1245 (¶11) (quoting *Carr v. State,* 873 So. 2d 991, 1003 (¶27) (Miss. 2004)).

¶12.    Defense counsel admitted to the trial court that the decision to withdraw the motion to suppress Johnson's statement, challenging its admissibility, was trial strategy. Counsel submitted:

> Your Honor, we're not fighting the admissibility of the statement. We want the statement in just as bad as [the State] do[es]. We want to be able to demonstrate how the statement was obtained and how the statement was not free. In fact . . . we expect a perjury to occur in this case. I'm not going to state exactly what it is right now. I'm going to lay the trap when it comes, but it's already occurred at a preliminary hearing. And I've got to prove it to the jury. This is part of our defense, and it's something that the jury is entitled to hear.

Defense counsel then asserted in the opening statement that Johnson's confession "was coerced as a result of him being put in the hole, [and] his family threatened[.]" Counsel cross-examined an officer present during the taping of the statement as to whether Johnson was coerced into confessing, and he insinuated that the audio tape had been shut off during portions of the statement. Finally, jury instruction D-3B, which was given by the court, instructed the jury to "consider all of the evidence, *including the circumstances under which any statement may have been made*." Thus, it is evident from the record that defense counsel's decision not to contest the admissibility of the statement was within the ambit of trial strategy and, therefore, does not give rise to a claim of ineffective assistance of counsel.

¶13.    Johnson has also failed to establish that if defense counsel had not withdrawn the motion from consideration, Johnson's statement would have been suppressed by the trial court. *See Robinson v. State*, 806 So. 2d 1170, 1175 (¶14) (Miss. Ct. App. 2002) (rejecting the claim that counsel's failure to call for a hearing on a motion to suppress was ineffective

assistance of counsel, as Robinson demonstrated "nothing which would lead [this Court] to believe the confession would have been suppressed"). As such, nothing supports Johnson's claim that counsel's failure to contest the statement's admissibility prejudiced his defense and constituted ineffective assistance of counsel.

### B. Counsel's Failure to Move for a Mistrial upon the Dismissal of Jurors

¶14. As we will discuss in greater detail in our analysis of the next issue, the trial judge dismissed two jurors during the trial and replaced them with alternate jurors. Johnson asserts that "trial counsel's performance fell below that which is guaranteed by the Sixth Amendment when he failed to move for a mistrial upon the trial court's dismissal of two jurors during the trial." Reviewing the record, we find Johnson has failed to show he suffered any prejudice from the court's dismissal of the jurors and, had counsel moved for a mistrial after the dismissal of the two jurors, the result of the proceedings would have been different. Therefore, we find no merit to this issue.

### II. Whether the trial court abused its discretion by dismissing two jurors during the trial.

¶15. Johnson argues the trial court abused its discretion in dismissing two jurors during the trial. After Juror 10 failed to show up for trial on the second day, informing the court that she had to take her daughter to a doctor in Jackson, the judge replaced the juror with an alternate. The second juror, Juror 3 (Kenneth Green), was observed by the State acknowledging a member of the defendant's family on his way out of the court room. After the trial judge questioned Green, the judge dismissed him and replaced him with an alternate.

7

Johnson argues that there was not sufficient cause to dismiss these jurors.

¶16.    Mississippi Code Annotated section 13-5-67 (Rev. 2012) governs the replacement of regular jurors with alternates, providing that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties."  "The decision to dismiss a juror for good cause and the subsequent replacement with an alternate is completely within the trial court's discretion." *McCoy v. State*, 820 So. 2d 25, 29 (¶11) (Miss. Ct. App. 2002) (citing *Stevens v. State,* 513 So. 2d 603, 604 (Miss. 1987)).  However, a trial court does not have authority to dismiss and replace a juror arbitrarily. *Id*.

¶17.    At the start of the second full day of trial, Juror 10 sent word that she had to take her child to see a doctor in Jackson.  The trial judge noted that she would "obviously . . . have to be replaced." No objection was made by defense counsel.  We find that the court was well within its discretion to dismiss Juror 10, as she failed to appear for trial and was out of town.

¶18.    We also find no abuse of discretion in the dismissal of Juror 3.  At the conclusion of the testimony, and after the jurors had been dismissed for the day, the State alerted the judge that Juror 3 had "passed by one of the men who was sitting with the defendant's family, and . . . . he reached out and touched him. They gave each other some kind of touch or whatever, he smiled and laughed and walked on out of the courtroom." The trial judge questioned Juror 3 the following morning. The juror said that the man had "bumped" him, and he told the man not to talk to him.  He did acknowledge smiling at the gentleman.  The person in question, however, was not in attendance that day.  Defense counsel objected to dismissing Juror 3,

8

arguing "there was no indication of wrongdoing other than smiling to an individual who we don't even know was a member of the [defendant's] family." However, the trial judge found the juror's replies to the court's questions "at least gave credence, verification[,] or affirmation" to the State's assertion that he smiled and brushed arms with the individual in the courtroom. Therefore, he dismissed Juror 3, and replaced him with an alternate.

¶19. We find no abuse of discretion in the trial court's dismissal of the two jurors. Further, Johnson has failed to show that he suffered any prejudice by the dismissal and replacement of the jurors. *See McCoy*, 820 So. 2d at 30 (¶13) (The defendant bears the burden of proving the dismissal of a juror, and the subsequent replacement with an alternate, "result[s] in some form of prejudice."). A defendant is "not entitled to any particular juror, only to a fair and impartial jury." *Smith v. State*, 724 So. 2d 280, 328 (¶193) (Miss. 1998) (citation omitted). Johnson made no attempt to show any actual prejudice suffered by the dismissal of the jurors. We find this issue is without merit.

¶20. Finding no errors on appeal, we affirm the judgment.

¶21. **THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF BOLIVAR COUNTY OF CONVICTION OF COUNT I, KIDNAPPING, AND COUNT II, MURDER, AND SENTENCE OF THIRTY YEARS FOR COUNT I, AND LIFE WITHOUT THE POSSIBILITY OF PAROLE FOR COUNT II, WITH THE SENTENCES IN COUNTS I AND II TO RUN CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY TO ANY PREVIOUSLY IMPOSED SENTENCE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $3,944 IN RESTITUTION AND $156 TO THE CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**