# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01095-COA

**RODNEY N. ROBINSON A/K/A RODNEY ROBINSON A/K/A RODNEY PETER ROBINSON, JR.**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/2016 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | WEBSTER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., ISHEE AND GREENLEE, JJ.

### ISHEE, J., FOR THE COURT:

¶1.     Rodney Robinson was convicted in the Webster County Circuit Court for burglary of an occupied dwelling under circumstances likely to terrorize the occupant. As a result, he was sentenced to thirty-five years in the custody of the Mississippi Department of Corrections (MDOC). Robinson moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the circuit court ultimately denied. He now seeks relief from this Court. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     In October 2015, three men broke into Melvon Fason's home on Waterworks Road in Eupora, Mississippi.  Officers Bradley Frost, Mitch Jackson, and Taylor Hitt were dispatched to Fason's home.  Fason informed the officers that three black males, one wearing dark or black clothing, had broken into his home and likely stolen several guns.

¶3.     Fason ultimately provided testimony through a pretrial deposition, as he was elderly and in poor health.  Fason testified that three black males broke into his home, entering through the kitchen door.  He further stated that only one of the men spoke, originally demanding money.  Fason, however, informed them that he did not have any money—as a result, the men began rummaging through Fason's home and eventually stole two weapons, a muzzleloader and a locked breech pistol.  Fason testified that he could not identify the men, though he knew they were three black males, and that one of the men had been wearing a jacket.

¶4.     Once the officers secured the scene, Jackson stated that he left to search for any suspects that may be on foot.  Jackson approached a familiar set of apartments known as Southwood Apartments, where he noticed three males—all fitting Fason's description—including one male dressed in all black clothing.  Jackson arrested the men, but found no weapons in their possession.  The three men were identified as Robinson, Dontarious Davis, and Joshua Johnson.  Robinson was the only one clothed in all black. Jackson then brought the three men to Fason's home, but Fason was unable to identify any of the men, or provide any description better than that which he had previously given.  And

2

so, Robinson, Davis, and Johnson were all released that night.

¶5.     The following day, Johnson attempted to sell a gun at a local pawn shop. Police were alerted, and Officer Greg Hunter took Johnson in for questioning; Johnson was seventeen years old at the time. Johnson ultimately gave a statement, the details of which he reiterated through his testimony at trial. Johnson testified that on October 10, 2015, he was with Robinson, Davis, and another male, Davarus Smith. He stated that he and the others purchased marijuana and began "trying to find something to get into." As they began walking around, Johnson said that he realized Robinson and Smith intended to burglarize a home on Waterworks Road—the two amended their original plan of breaking into a first house, and instead chose a home two houses down, which was Fason's.

¶6.     Johnson testified that he and Davis did not wish to participate in the crime, but that Robinson and Smith made them do so by holding guns to their heads. Johnson said that he was forced to stand by a fence and serve as the lookout while Robinson, Davis, and Smith went into Fason's home. He further testified that after a short time (approximately two or three minutes), Robinson, Davis, and Smith came running from the home with more guns than they had when they entered. He then stated that Robinson and Smith forced him and Davis at gunpoint to flee with them. Johnson testified that the group cut through a field between Waterworks Road and Southwood Apartments, hiding the guns behind an old building in the process; Johnson said Smith fled from the group at some point before exiting the field. Robinson, Davis, and Johnson were spotted by Jackson shortly thereafter and detained. Lastly, Johnson testified that the day after the burglary, Smith came to him with

a gun Johnson had never seen before, and told him to try to sell it at the local pawn shop, where he was ultimately arrested by Hunter.

¶7.     Several days later, Robinson was brought in for questioning by the Eupora Police Department.  Robinson was explained his *Miranda* rights,[1] read a waiver-of-rights form, signed the form, and thereby waived those rights. Officer Morton testified that he questioned Robinson and that, during the interview, Robinson provided a statement, which Morton transcribed, and Robinson signed.  Morton stated that he neither threatened nor coerced Robinson into giving the statement.

¶8.     Robinson's statement was entered into evidence and read to the jury.  In that statement, Robinson told officers that: he met and smoked marijuana with Davis and Johnson the night of the burglary; later that evening, Davis told him that he and Davis needed to "hit a quick lick and make some quick money"; they all went to Fason's home; Johnson and Davis broke into Fason's home; he remained outside on his phone because he refused to enter the home; Davis and Johnson were in Fason's for about three minutes; they ran down the street with rifles; after Davis and Johnson stole the weapons, they walked to Southwood Apartments; and shortly afterwards they were detained by police.  Robinson denied Smith being present and stated that he never entered Fason's home that evening.

¶9.     Upon conclusion of trial, Robinson was convicted of burglary of an occupied dwelling under circumstances likely to terrorize the occupant.  And because Fason was over the age

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

of sixty-five, Robinson's sentence was enhanced pursuant to statute;[2] he was therefore ordered to serve thirty-five years in MDOC custody. Robinson moved for a JNOV or, in the alternative, a new trial, which the circuit court denied. His sole argument on appeal is that the verdict was against the overwhelming weight of the evidence.

## STANDARD OF REVIEW

¶10. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, [this Court] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). "As such, our scope of review is limited in considering challenges to the weight of the evidence." *Danner v. State*, 748 So. 2d 844, 846 (¶7) (Miss. Ct. App. 1999). "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will [constitute] an unconscionable injustice." *Id.*

## DISCUSSION

¶11. Reviewing the evidence in a light most favorable to the verdict, we cannot say that the circuit court abused its discretion in denying Robinson's motion for a new trial. Nor can we conclude that to allow his conviction to stand would result in an unconscionable injustice.

¶12. On appeal, Robinson argues that the State failed to prove beyond a reasonable doubt

---

[2] *See* Miss. Code Ann. § 99-19-351 (Rev. 2007).

that Robinson committed the crime as charged, as there was no physical evidence linking him to the scene. He further asserts that Johnson, who received a lesser sentence due to his juvenile-offender status, had motivation to implicate Robinson. We, however, find these arguments unpersuasive.

¶13. The evidence in this case illustrates the following: Robinson admitted that he was present at the burglary; that he had personal knowledge of the crime; and that much of his testimony corroborated the details of Johnson's testimony. Furthermore, Fason testified that three men entered his home to rob him, and that one of them was wearing all black clothing—when arrested, Robinson was the only one dressed in all black. Robinson also admitted that he was with only two other men that evening, and that all three men were present at the scene of the crime. Lastly, Robinson admitted that he knew guns were stolen from Fason's home.

¶14. Although Robinson and Johnson both denied personal participation in the burglary, the jury—as trier of fact—was instructed that, if they found Johnson's testimony to be uncorroborated by other evidence, they should regard that testimony with great care. Johnson testified that his juvenile case had concluded, and that he had since been sentenced. Therefore, he was receiving no benefit from his testimony in Robinson's trial—which, again, was a reiteration of his statement to Eupora police officers. As such, "[t]he jury is the final arbiter of a witness's credibility." *Williams v. State*, 794 So. 2d 1019, 1028 (¶59) (Miss. 2001). Thus, "[t]he jury weighs the weight and worth of any conflicting testimony." *Id.* Here, the jury heard the evidence, weighed the same, and ultimately found that Robinson

6

participated in the burglary. Based upon the evidence presented, we conclude the jury was entitled to find such. *See id.* This issue is without merit.

## CONCLUSION

¶15. In sum, having reviewed the evidence in a light most favorable to the verdict, we cannot say that the circuit court abused its discretion in denying Robinson's motion for a new trial. *Danner*, 748 So. 2d at 846 (¶7). We likewise cannot find that the verdict is so contrary to the overwhelming weight of the evidence that to allow his conviction to stand would sanction an unconscionable injustice. *Bush*, 895 So. 2d at 844 (¶18). Therefore, we affirm.

¶16. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**